Dunlap *v.* Wilson et al.

## JAMES DUNLAP

*v.*

## LEVIN J. WILSON *et al.*

| 32 | 517 |
| 138 | 185 |
| 32 | 517 |
| 60a | 251 |
| 32 | 517 |
| 179 | 30 |
| 32 | 517 |
| 211 | 550 |

1. SWORN ANSWER IN CHANCERY — *one witness not sufficient.* The testimony of a single witness, is not, of itself, sufficient to overcome a sworn answer in chancery.

2. SUBSEQUENT PURCHASER — NOTICE — *knowledge of attorney, how far presumptive notice to the client, &c.* The mere fact that an attorney employed by one about to purchase land, in connection with the transaction, as in the investigation of the title, was also, at the same time, and for several years prior thereto had been acting as the attorney of a prior mortgagee of the same land, will not authorize a presumption that the attorney had such knowledge of that particular mortgage as to lead to the inference that the subsequent purchaser had notice, through his attorney, of the prior unrecorded incumbrance. It could hardly be inferred that because the attorney of the purchaser was, and had been acting as the attorney of the mortgagee, he was fully informed of all his client's business.

3. It might be otherwise, however, had he been recently employed by the prior mortgagee in connection with the particular transaction, as he then would have the knowledge, and would be presumed to have acted with reference to it. Had it appeared that the mortgage in question was written by the attorney, then the presumption would be indulged that he communicated the fact to the subsequent purchaser by whom he was consulted in relation to the title, before he received his conveyance.

4. SAME — OF PRESUMPTIVE NOTICE *from general business relations of attorney with prior incumbrancers.* The mere fact that the attorney who was employed to examine the title to the land for the subsequent purchaser, was a director of the bank to whom the prior mortgage had been given, would not afford evidence of notice of such prior incumbrance to the subsequent purchaser.

5. Had it appeared that the attorney, as one of the directors of the bank, was present and acting with the board of directors, when they determined to procure the mortgage, or when its execution was reported to them, it might be presumed that he communicated the fact to the subsequent purchaser.

6. JUDICIAL NOTICE. But the court cannot judicially know that any such action was had by the board of directors; or, if it was, that the attorney was present and participated in its action.

7. SUBSEQUENT PURCHASER — *his rights as against a prior mortgagee — with and without notice on the part of the subsequent purchaser.* If a party purchases and obtains a conveyance of land, having no notice, actual or constructive, of a prior mortgage, he takes the land free from the incumbrance.

8. But if such subsequent purchaser took his conveyance with notice of the prior mortgage, he, of course, holds subject to the mortgage, but he or his grantees

have still the right to redeem, and can only be deprived of that right by a foreclosure of the mortgage, or by its being barred in some of the modes known to the law.

9. SAME — *where subsequent purchaser is not a party to a suit for foreclosure of prior mortgage.* So, if the mortgage be foreclosed in a proceeding to which such subsequent purchaser was not a party, his rights would remain unaffected by any decree rendered in that suit.

10. And, in any event, the purchaser, under the decree of foreclosure, would have no right to demand that his title should be quieted by having the subsequent conveyance declared void, and thus cut off the subsequent purchaser's right of redemption.

WRIT OF ERROR to the Circuit Court of Union county: the Hon. ALEXANDER M. JENKINS, Judge, presiding.

On the 19th day of February, 1840, Ephraim H. Gatewood and his wife executed and delivered to the Bank of Illinois, a mortgage upon certain real estate then owned by him, situate in the counties of Gallatin, White, Massac and Pulaski, to secure the payment of $12,500.

The mortgage was recorded in Gallatin county, on the 11th of March, 1840; in Massac on the 8th of March, 1845; in Pulaski on the 11th of March, 1845; and in White on the 16th of January, 1846.

In 1848, Gatewood died intestate, not having paid the debt secured by the mortgage.

In September, 1850, the assignees of the bank exhibited their bill in chancery in the Circuit Court of Gallatin county, against the administrator and heirs of Gatewood, praying a foreclosure of the mortgage, and a sale of the property. At the July Term, 1852, a decree was pronounced in that suit, directing a sale of the property for the satisfaction of the debt. On the 19th of October following, a sale was had under the decree, at which James Dunlap became the purchaser of the lands included in the mortgage, which were situate in Massac county, and on the same day received a conveyance from the master in chancery. At the December Term, 1852, the master's report of the sale was approved and confirmed by the court; and on the 10th of January, 1853, Dunlap filed his deed for record in the proper

office in Massac county, and it was duly recorded on the 9th of February following.

In the meantime, on the 4th day of October, 1843, Levin J. Wilson, then a resident of New Orleans, visited Shawneetown, in Gallatin county, for the purpose of collecting certain debts due him at that place, and among others, one from Gatewood. Wilson employed Henry Eddy, Esq., then an attorney-at-law, residing at Shawneetown, to aid him in examining the title to the lands mentioned lying in Massac county, and in procuring a deed therefor from Gatewood, in payment of his claim against him. This was accomplished—Wilson obtaining a conveyance of the Massac county lands on the day last mentioned, from Gatewood, which he procured to be duly recorded in Massac county, on the 20th of January, 1844, the mortgage from Gatewood to the bank, it being observed, not as yet having been put upon record.

On the 15th of December, 1856, Wilson conveyed the lands to William Z. Coleman, for the nominal consideration of $100 but in fact as a gift, in consideration of love and affection, Coleman being a nephew of Wilson. Neither Wilson nor Coleman was made party to the proceedings for foreclosure by the assignees of the bank.

Upon this state of fact, on the 10th day of February, 1860, Dunlap instituted this suit in chancery against Wilson and Coleman, in the Circuit Court of Massac county, and afterward the cause was removed upon change of venue, into the Circuit Court of Union county. Dunlap set up in his bill his purchase of the Massac county lands under the decree of foreclosure, alleging that at the time he had no knowledge in fact of the conveyance to Wilson, but charged that Wilson purchased of Gatewood with knowledge of the existence of the mortgage to the bank. That Henry Eddy, Esq., an attorney-at-law at Shawneetown, was the attorney of Wilson in procuring the conveyance from Gatewood, and wrote the deed; and that Eddy knew at the time of the existence of the mortgage, and that in fact the mortgage was written by him.

It was further alleged in the bill that the lands were vacant and unoccupied, never having been inclosed or taken possession of. The bill prays that the conveyance from Gatewood to Wilson, and from Wilson to Coleman be declared void, to the end that complainant's title may be quieted.

Wilson answered the bill, under oath, denying notice of the mortgage to the bank, and, in reference to the agency of Mr. Eddy in the matter, stated that, before making the trade, he employed said Eddy to examine the title, and to inform him whether the title to Gatewood was good, and whether there were any mortgages or other liens on the land, and he was informed by Eddy that the title was good and unincumbered; that said Eddy was not his agent for any purpose except to examine the title as aforesaid. He further stated that his conveyance of the lands to Coleman, his nephew, was without other consideration than love and affection for his said nephew, and was intended to advance him in the world, without any knowledge that the land was claimed by complainant, or any one else.

Coleman also answered, under oath, denying notice of the complainant's claim, and insisting upon his title.

Replications were filed and the cause came on for hearing. The complainant introduced in evidence the record of the proceedings, and decree of foreclosure at the suit of the assignees of the bank against the representatives of Gatewood, and the master's deed to Dunlap.

*Alexander Kirkpatrick* testified on behalf of the complainant, that upon the occasion of Wilson visiting Shawneetown for the purpose of collecting some debts due him, he inquired of witness about Gatewood's situation, and the prospect of collecting a debt from him. Witness told him the chances were bad; that Gatewood had failed and was entirely broken up; that he had mortgaged all his lands to the bank for more than they were worth, but possibly he might get something. At his suggestion, Wilson employed Henry Eddy to assist him in collecting or securing the claim. Wilson remained in Shawneetown ten days or two weeks, during which time witness saw him and

Eddy together frequently. Before Wilson left Shawneetown he informed witness that he had settled with Gatewood, and obtained two hundred acres of land near Fort Massac, for his claim. Witness told him he would not give much for the land, as it was mortgaged to the bank. He also testified that Mr. Eddy was then, and had been for several years the attorney for the bank, and knew of Gatewood's indebtedness to the bank, and of his having executed mortgages to it, some, if not all of which were written by said Eddy; that Eddy also knew of Gatewood's failure in business.

The defendants gave in evidence certified copies of the deeds from Gatewood to Wilson, and from him to Coleman.

Upon the evidence the court below entered a decree dismissing the bill. The complainant now brings the case here upon writ of error.

The questions arising upon the record are: *First.* Had Wilson notice of the mortgage to the bank at the time he purchased from Gatewood? *Second.* Even if he purchased with such notice, is the complainant entitled to the character of relief sought by his bill?

Mr. Wm. Thomas, for the plaintiff in error.

Mr. J. Dougherty, for the defendants in error.

Mr. Justice Walker delivered the opinion of the Court:

It appears from the evidence in this case, that Gatewood, being indebted to the Bank of Illinois in a large sum, executed a mortgage embracing the lands in controversy, together with others, to secure its payment. It bears date on the 19th of February, 1840, and was recorded in the proper office on the 8th day of March, 1845. That in the year 1848, Gatewood died intestate, without having paid the mortgage debt, or otherwise released the lands from the lien of the mortgage. In September, 1850, the assignees filed their bill against Gatewood's administrators and heirs, to foreclose the mortgage; obtained a decree, and the lands were sold under the decree on the 19th of October, 1852. At that sale plaintiff in error became the pur-

chaser of the premises in controversy for $2,357.06, and received a deed, on that day, from the master in chancery. The sale was approved and confirmed by decree of the court.

On the 14th day of October, 1843, defendant Wilson obtained a deed for these lands from Gatewood, in payment of a debt the former held against the latter. This deed was duly recorded on the 20th day of January, 1844. On the 15th day of December, 1856, Wilson conveyed the land in controversy to defendant, Coleman, for the consideration of one hundred dollars. This deed was recorded in the proper office on the 16th day of March, 1858. This bill was exhibited on these facts for the purpose of quieting the title of complainant and to have Gatewood's deed to Wilson, and Wilson's deed to Coleman canceled.

The bill charges notice of the existence of the mortgage to the bank, by Wilson when he purchased of Gatewood, and that the conveyance by Wilson to Coleman was made in consideration of natural love and affection, Coleman being a nephew of Wilson. They, in their answer, deny all notice, but admit the relationship, and that the consideration for the conveyance was natural love and affection. Coleman alleges in his answer, that he had exercised acts of ownership over the land for more than seven years before this suit was instituted, by paying taxes, protecting the timber, as well as by other acts, and insists upon the statute of limitations as a bar to this suit. On the hearing in the court below, the bill was dismissed, which is now assigned for error.

There can be no pretense that defendants, or either of them, had constructive notice of this incumbrance, by its being recorded. The deed to defendant, Wilson, was executed before the mortgage was placed upon record, and it was recorded nearly fourteen months before the mortgage. If, then, Wilson took subject to the mortgage, it was because of actual notice of its existence, or of notice of such facts as, upon reasonable inquiry, would have led to notice of the mortgage. This is positively denied by a sworn answer. Kirkpatrick, however, testifies that he informed Wilson, both before and after his purchase, that all of Gatewood's lands were mortgaged to the bank.

This is the only witness who attempts to prove that there was actual notice before the deed was executed. This evidence of but one witness is not sufficient to overcome the sworn answer of defendant, Wilson.

But it is insisted that, as the evidence shows that Wilson employed Eddy as an attorney to assist him in securing his debt of Gatewood, and as he was the attorney of the bank, and was proved to have written some mortgages to the bank, and also had been a director in the bank, it must be inferred that he communicated information of the fact to Wilson before he purchased. It will be observed there is no evidence that Eddy drew this mortgage, or that he had any knowledge of its existence. It can hardly be inferred that because a person has acted as the attorney of another, he therefore is fully informed of all of his client's business. It might be otherwise, however, when he had been recently employed in connection with the particular transaction, as he then had the knowledge, and must be presumed to have acted with reference to it. Had it appeared that Eddy drew the mortgage in controversy, then the presumption would be indulged that he communicated the fact to Wilson before he received his conveyance.

Nor is it perceived that the fact that Eddy was a director of the bank affords evidence of notice. If it had appeared that he was present and acted with the board of directors when they determined to procure the mortgage, or when its execution was reported to them, it might be presumed that he communicated the fact to his client. But the court cannot judicially know that any such action was had by the board of directors, or if it was, that Eddy was present and participated in its action. We are of the opinion that the evidence fails to overcome the sworn answer, there being the evidence of but one witness which contradicts it.

Again, the relief sought could not have been granted, however conclusive the evidence might have been. If Wilson purchased without notice, actual or constructive, he, by first recording his deed, acquired title freed from the incumbrance of the mortgage. But suppose he had both actual and constructive notice,

what were his rights? It will be conceded that he purchased the title subject to the mortgage. That he acquired the right to redeem the property. Having acquired this right, he or his grantees could only be deprived of it by foreclosure, or its bar in some of the modes known to the law. This record discloses no such action. It is true that it shows a foreclosure of the equity of redemption of Gatewood's administrator and heirs, because they were made parties to that suit; but neither of these defendants was made party to that proceeding, and until they were before the court, their rights could not be affected by any decree it could render. All that was sold under that decree was the supposed interest of Gatewood's estate, and it is manifest that they had none to be affected, as the title had passed to Wilson, subject to this incumbrance. The title having also passed to Coleman in the same condition, and he not having been made a party to the foreclosure suit, his rights remained unimpaired. Then upon what principle could his deed be declared void, even with notice? It would be highly unjust and inequitable, although it appeared that Wilson purchased with notice, to cancel these deeds, and deprive Coleman of the right to redeem from the mortgage.

The court below committed no error in dismissing the bill, and the decree is affirmed.

*Decree affirmed.*