# The Illinois Central Railroad Company

## *v.*

## Thomas McCullough.

1. Possession—*as notice to subsequent purchasers.* Where a vendor of land continues to remain in possession of the premises, such possession will constitute constructive notice to a subsequent purchaser from his vendee, of the rights and equities of the first vendor in the land, and the second purchaser will hold subject to those rights and equities.

2. Escrow—*where a deed intended as an escrow is put upon record without the knowledge or consent of the grantor.* Where a vendor of land executed a deed and left it in the hands of the officer taking the acknowledgment, to be by him delivered to a third person who was to hold it as an *escrow* until the purchase money should be paid, but, without ever having come to the hands of him who was to hold it as an *escrow,* the deed was placed upon record, without the knowledge or consent of the grantor, it was *held,* the agreement between the parties that the deed was not to be delivered or recorded until the purchase money should be paid, continued until changed by the consent of the vendor, and a subsequent purchaser from his vendee, with notice, would hold subject to the rights and equities of the first vendor, arising from such agreement.

3. Same—*what would amount to a delivery of the deed.* In case of a sale of the land by the first vendee, and the acceptance by his vendor of the notes of the second purchaser for the unpaid purchase money due the former, together with a mortgage from the latter on the same premises, to secure such notes, which were taken in lieu of the notes given by the first purchaser, a recognition by the original vendor, of title in the mortgagor, would be implied thereby, and his assent to the delivery of his deed to his vendee.

4. But such a transaction would not, of itself, import that the assent of the original vendor, to the delivery of the deed, was given at any time prior to the acceptance of the notes and mortgage of the second purchaser, nor would it necessarily imply a ratification of the obtaining possession of the deed and putting it on record, contrary to the agreement in respect thereto. The legal intendment could be no more than that the first vendor consented to a change in the form of his security, and assented to the delivery of the deed to his vendee, on the condition that he should, at the same time, receive back a mortgage of the lands to secure the payment of what remained due to him.

5. Same—*and herein, of an intervening incumbrance.* The assent by the original vendor to the delivery of the deed to his vendee, and his acceptance of the mortgage from the second purchaser, being simultaneous acts,

and the title resting but for an instant in either vendee, a deed of trust executed by the first vendee to a third person prior to that transaction, would not attach as a lien upon the land, to the prejudice of the subsequent mortgage, merely by reason of the title remaining in the maker of the deed of trust or the subsequent mortgagor for the brief interval necessary to the consummation of the transaction, as would have been the case if it had so remained for any time.

6. VENDOR AND PURCHASER—*subsequent incumbrancer.*   Where a vendor of land has received a part of the purchase money, and seeks, by foreclosure of mortgage, to compel the payment of the residue, he is entitled to retain what he has received, and take a decree for the unpaid balance. In such case, it is error to decree a return by the vendor, of the portion of the purchase money already paid.

7. And in case the vendee has given a deed of trust on the premises, to a third person, who became the purchaser at a sale thereunder, had prior to the foreclosure in favor of the original vendor, all the interest of him who made the deed of trust will pass to such purchaser, so that, if there be an overplus arising from the sale under the decree of foreclosure, it should be paid over to the purchaser under the deed of trust, instead of the original vendee.

APPEAL from the Circuit Court of Jefferson county.

Messrs. GREEN & GILBERT, for the appellants.

Mr. W. STOKER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

In October, 1857, an agreement was entered into between Thomas McCullough and Aaron K. Corey, whereby McCullough was to sell to Corey certain tracts of land in Jefferson county, for the sum of $3225—$125 of it to be paid within a certain time, which was paid, the residue to be paid in instalments. A warranty deed of the lands was to be made to Corey and placed in the hands of one McCord, to be held as an escrow until the last payment of the purchase money was made, and until which time the deed was not to be recorded. November 9, 1857, McCullough signed, sealed, and acknowledged the deed before one Stickney, a justice of the peace, since deceased, who was to hand it to McCord. The latter

never received possession of the deed, and in some unexplained manner it was filed for record on the 11th of November, 1857, and recorded in the recorder's office of Jefferson county.

On the 26th day of April, 1858, Corey and his wife executed to William H. Howell a trust deed of the lands, to secure the payment to the Illinois Central Railroad Company of an indebtedness in its favor against Corey, which deed was filed for record the 28th of said month, and under which the lands were subsequently sold by Howell, and bought in by the railroad company for the sum of $2500

June 7, 1858, Corey sold the lands to Oxley & Taylor, for $5125, and Corey and wife executed to them a warranty deed of the lands, which was filed for record July 15, 1858 ; for $3125 of which purchase money, Oxley & Taylor executed their notes to McCullough, secured by their mortgage on the lands, which McCullough accepted in the stead of the notes Corey had executed to him, for the unpaid part of the purchase money due from Corey, and surrendered up to Corey his notes.

McCullough remained in the sole possession of the lands from the date of the deed to Corey and before, up to the filing of the bill.

On the 25th day of February, 1859, McCullough filed his bill in equity, praying that the lands be sold, to pay the residue of the purchase money due him, or that the mortgage by Oxley & Taylor, to McCullough, be foreclosed, and the premises sold to satisfy the notes given by Oxley & Taylor to McCullough, and that the trust deed given to Howell be postponed to complainant's claim for the purchase money, or that said deed of trust be cancelled.

The court below decreed a foreclosure of the Oxley & Taylor mortgage, postponed the rights of the railroad company to those of the complainant under said mortgage, found the sum due to the complainant, and ordered the lands, or so much thereof as might be necessary to satisfy said sum, to be sold,

and ordered the complainant to pay to Corey the sum of $125, paid by Corey on the lands, with interest.

The Illinois Central Railroad Company, one of the defendants, appeal from the decree.

The specific errors assigned are, that the court erred in postponing the trust deed to Howell from Corey, to the mortgage to McCullough from Oxley & Taylor, and in ordering $125 and interest to be paid to Corey instead of to the Illinois Central Railroad Company.

At the time of the execution of the deed of trust to Howell, in trust for the railroad company, McCullough was in possession of the lands. That possession was constructive notice to Howell and the company, of McCullough's rights and equities in the lands, and they took the deed of trust subject to those rights and equities.

The proof is undisputed, that the deed from McCullough to Corey, was to be placed in the hands of McCord, to be held by him as an escrow, until full payment of the purchase money should be made, and, until then, the deed was not to be recorded.

So far as appears, the obtaining possession of the deed by Corey and the recording of it, were without the consent or knowledge of McCullough.

The agreement made between the parties, that the deed was to be placed in the hands of a third person, and not be delivered until the residue of the purchase money should be paid, continued until changed.

There is no evidence of any express change of the agreement, and none of any implied change, further than may be derived from the appearance of the deed upon the record, and the transaction of taking the Oxley & Taylor notes and mortgage.

The first circumstance, of itself, is insufficient, taken in connection with the other evidence in the case, to warrant the inference of any change on the part of McCullough, in the terms upon which the deed was to be delivered. But the transaction of taking the notes of Oxley & Taylor, and their

mortgage of the lands to secure their payment, in lieu of the notes of Corey, and surrendering up to the latter his notes for the unpaid part of the purchase money, must be held to amount to an implied recognition of title in Oxley & Taylor, and assent to the delivery to Corey of his deed, as the title of Oxley & Taylor must have come from Corey, and he could have no valid title without the delivery to him of McCullough's deed.    But this naked transaction does not, of itself, import that such assent was given at the time Corey actually obtained possession of the deed, or filed the same for record, or executed the trust deed to Howell, or at any time prior to that transaction itself; nor does it necessarily imply a ratification of the obtaining possession of the deed and putting the same on record by Corey—there is no evidence that McCullough had actual knowledge of that fact.    It is quite unlikely that he would knowingly give up a first lien which he had upon the lands, and take a second mortgage, subordinate to the deed of trust of the railroad company, to secure their large claim. The legal intendment can be no more than that McCullough consented to a change in the form of his security, and assented to the delivery of the deed to Corey, on the condition that he should at the same time receive back a mortgage of the lands, to secure the payment of what remained due to him.

Until the assent of McCullough was given to the delivery of the deed to Corey, the title did not pass to the latter.

The deed from Corey to Oxley & Taylor and their notes and mortgage to McCullough bear the same date, and there being no evidence of any prior consent to the delivery of the deed to Corey, and the legal import of that transaction of itself being no more than that such assent was given at that time, it follows, that at the same time that McCullough parted with his title to the lands, he received back a mortgage of them from Oxley & Taylor, to secure the payment of the remainder of his purchase money.    These being simultaneous acts, and the title resting but for an instant in Corey, or Oxley & Taylor, adverse rights which otherwise, if it had so remained

for a length of time, would have attached upon the lands in their hands, did not so attach. As no right of dower, or judgment, or attachment lien, would, in such case, attach upon the lands as against the mortgage, *Curtis* v. *Root*, 20 Ill. 53, 1 Wash. Real Prop. 205, *Hazleton et al.* v. *Lesure*, 9 Allen, 24, for the same reason the mortgage should be unaffected by the prior deed of trust, which had been executed by Corey to Howell.

The deed of trust to Howell for the benefit of the railroad company having been executed previously, and McCullough having appeared at the time of the sale under the deed of trust and forbidden the same, it does not appear that the company could have been misled, to its injury, by the transaction with Oxley & Taylor.

It was erroneous to order the payment by McCullough to Corey of $125, which Corey had paid on the land.

All the interest of the latter in the lands had become vested in the Illinois Central Railroad Company, by the sale under the deed of trust, and Corey was entitled to nothing further in respect to them. McCullough was entitled to retain what he had received of the purchase money, and to have the lands sold for payment of the residue ; and any overplus that might arise from the proceeds of the sale, should be paid to the railroad company, as having succeeded to all the interest of Corey in the lands.

It is objected that there was no express provision to that effect in the decree, but as such would have been the legal result, the decree should not be held erroneous because of the omission of that provision, although the decree might very properly have contained such a direction.

An account should have been taken of the rents and profits of the lands, from the time of the making of the notes and mortgage of Oxley & Taylor to McCullough, and he should have been charged with the same, after the deduction of all sums paid for taxes and necessary repairs of the premises.

The decree of the court below must be reversed and the cause remanded, for further proceedings in conformity with this opinion.                               *Decree reversed.*