# GEORGE C. CAMPBELL *et al.*

## *v.*

## CLARA BENJAMIN *et al.*

1. EVIDENCE—*when title is claimed under foreclosure, whether the decree of sale must be produced.* Where a party who had acquired title to real estate under a sale, under a foreclosure of a mortgage given by himself and wife, the land belonging to the wife at the time of the execution of the mortgage, executed a deed of trust thereon, and afterwards sold and conveyed the same, and it appeared that, at the time of the foreclosure, the wife was dead, leaving an infant heir, who was made a party, with the father, to the suit to foreclose, and on bill to foreclose the deed of trust against the party giving the same and the party in possession, who had succeeded to such party's title, and was claiming under it, and who had also acquired the title claimed to be in the infant heir, such party in possession, in his answer, alleged that the sale under the foreclosure was fraudulent as to the infant heir, and that the father acquired the legal title to the premises in trust for the infant heir: *Held,* that this admission in

the answer dispensed with the necessity of producing the decree of foreclosure, for the reason that, unless the decree ordered the sale of the infant's interest, the father could not have acquired the legal title.

2. PURCHASER—*rights of one whose duty it was to have paid the debt.* Where a husband and wife executed a mortgage upon land of the latter, to secure a debt of the former, and after the death of the wife, leaving an infant heir, on sale under foreclosure of the mortgage the premises were purchased by a third party for the mortgagor, and who, on the same day he received his deed for the property, conveyed it to the mortgagor, who owed the debt, it was *held,* that if the sale had been attacked while the title was in the hands of the latter it might have been set aside, but as to a *bona fide* subsequent incumbrancer, holding under a deed of trust executed by the mortgagor, without notice of fraud in the sale, or unfair dealing on the part of the mortgagor in obtaining the title, his title could not be defeated or the facts shown to defeat a foreclosure of his trust deed.

3. NOTICE—*whether knowledge in party's attorneys is notice to him of equitable right in another.* If attorneys employed to foreclose a mortgage knew, at the time of the sale of land under the decree, that it was purchased by a party for the mortgagor, who owed the debt, to acquire the title, which had descended to an heir of his wife, and being employed by a party loaning money to such mortgagor, who had thus acquired the legal title, to examine the title, they should fail to communicate their information to him, but, on the contrary, should pronounce the title in such party good, such creditor or his trustee will not be chargeable with notice of the facts the attorneys had so previously obtained.

4. ESTOPPEL—*to deny validity of trust deed or right to give the same.* Where, after the execution of a deed of trust by a party on land to which he held the legal title, the defendant purchased the same from a grantee of such party and received a conveyance, with full knowledge of the existence of the incumbrance, and the circumstances showing that he agreed to pay off the same, or the amount of the incumbrance was deducted from the price he paid, and went into possession under such purchase, and received the rents and profits, and when the trustee was about to sell the property, his father-in-law, to prevent the sale, at the defendant's request purchased half of the debt so secured, and reserved an option to purchase the balance in one year, and agreed that, if he did not, the creditor might foreclose without let or hindrance for the balance due him, and the defendant made several payments of interest: *Held,* that, from the relations of the parties and the facts, it would be inequitable to allow the defendant to set up, in defense of a bill to foreclose the trust deed, that the grantor had no right to give the deed of trust, for the reason that he held the legal title in trust for his infant son, whose claim the defendant had, in the meantime, acquired.

5. CHANCERY—*relief to a defendant without cross-bill and against his desire.* On bill by the holder of a debt secured by deed of trust, against a party who had succeeded to the grantor's interest, and another who had acquired half of the debt so secured, to foreclose the deed of trust, it was *held* error for the court to require the sale of the premises for the sums found to be due both the complainant and his assignee, he not having filed any cross-bill asking for relief, and not desiring to have the land sold for the money due him.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in equity, exhibited by Clara Benjamin and S. G. W. Benjamin, her husband, against George C. Campbell, Joseph O. Glover, Samuel R. Haven, Mary A. Stowell, etc., to foreclose a certain deed of trust executed by Charles H. Scriven to Samuel R. Haven, to secure the payment of a note of $6000, given by said Scriven to Clara Benjamin. The opinion of the court contains a statement of the leading facts of the case.

Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, for the appellants.

Messrs. HERVEY, ANTHONY & GALT, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, filed in the Superior Court of Cook county, by appellees against appellants, for the purpose of foreclosing a trust deed upon certain real estate in Chicago.

The trust deed bears date April 2, 1866, and was recorded April 6th. It was given by Charles H. Scriven to Samuel R. Haven, as trustee, to secure a note of $6000, due in three years, given to Clara Benjamin, and another note of $1500, given to Mary A. Stowell.

The $1500 note has been paid, and Glover, one of appellants, had, prior to the filing of the bill, purchased one-half of the $6000 note.

The court, on hearing the cause, decreed that there was due appellees $3305, and due appellant Glover $4271.25; that, in default of payment by appellant Campbell, of the amount due both, the property should be sold by the master.

A reversal of the decree is urged by the solicitors of appellants, upon three grounds:

*First*—Because there is no proof of a decree authorizing the master to sell the infant's interest in the foreclosure of the Oldershaw mortgage.

*Second*—Because, if there was such a decree, Scriven was the purchaser at the sale and took no title, and Haven was fully aware that he was such purchaser, and must be charged with the legal consequences of such knowledge.

*Third*—Because of the decree in favor of defendant Glover against his co-defendant, without a cross-bill asking such relief.

In order to obtain a clear understanding of the position assumed by appellants, it becomes necessary to state the leading facts of the case:

In 1864, the property in controversy was owned by Elizabeth Scriven, wife of Chas. H. Scriven. She executed a mortgage on the property to one Oldershaw, of New York, to secure a note for $2000, given by her husband. In 1865 Mrs. Scriven died, leaving an only child, Geo. P. Scriven, a minor.

After the death of Mrs. Scriven, this mortgage was placed in the hands of Hervey, Anthony & Galt, a law firm of Chicago, for collection. They brought a bill in the circuit court of the United States, for the Northern District of Illinois, in favor of Oldershaw against Chas. H. Scriven, and his son, Geo. P. Scriven, to foreclose the mortgage. The cause proceeded to a hearing, and a decree was entered directing a sale of the property. On the 31st of March, 1866, the premises were sold, under the decree, to one Wait, for $2207.56, and a deed made to him by the master. On the same day Wait conveyed the premises to Chas. H. Scriven, the consideration

named in the deed being $2500. Both of these deeds were recorded on the 2d day of April, 1866.

Some time after making the deed of trust to secure the debt of appellees, Chas H. Scriven sold the premises, and after several *mesne* conveyances the title, in May, 1869, was purchased by appellant Campbell, who went into possession under this title, and has occupied under it ever since, receiving the rents and profits.

On the 26th day of October, 1872, Geo. P. Scriven, who was still a minor, conveyed to Joseph O. Glover, and on the 12th day of June, 1873, he and his wife conveyed to appellant Campbell.

Campbell resists the foreclosure of the deed of trust, on the ground that Charles H. Scriven, at the time he executed it, had no title to the premises ; that the foreclosure of the Oldershaw mortgage did not divest the minor, Geo. P. Scriven, of title ; and that he, having acquired the title of Geo. P. Scriven, has the right in equity to defeat the foreclosure of appellees' deed of trust, although he, in the first instance, derived title from Chas. H. Scriven, and has all the time held under that title.

In regard to the first point made by appellants, while it is true the decree of foreclosure on the Oldershaw mortgage was not introduced in evidence, yet it appears, from the record, that a bill was filed to foreclose the Oldershaw mortgage ; that Charles H. and Geo. P. Scriven were parties defendant therein ; that a decree directing the sale of the premises was entered, a sale made by the master, and a deed given in pursuance of the sale.

By reference to the answer of appellant Campbell, we find an admission, as follows : "Respondent avers that said sale was fraudulent and void against Geo. P. Scriven, and that said Charles H. Scriven, through and by the said proceedings and sale, *acquired the legal title to said premises in trust* for said Geo. P. Scriven."

It can not be pretended that Charles H. Scriven obtained the legal title to the premises by virtue of the sale under the decree obtained by Oldershaw, unless the decree directed and authorized a sale of the interest held and owned by Geo. P. Scriven, derived from his mother, as heir.

From this admission in the answer, in connection with the other evidence in the record, we can not come to any other conclusion than that the decree of foreclosure authorized the sale of the title of Geo. P. Scriven, in the premises.

The court in which the decree was rendered had jurisdiction of the parties and subject matter, and, being a court of general jurisdiction, whether the decree was right or wrong can not be inquired into here.

We now come to the second point relied upon by appellants. The evidence shows, beyond dispute, that while Wait purchased the premises at the master's sale in his own name, the purchase by him made was, in fact, for the benefit of Chas. H. Scriven, to whom he conveyed.

It is, no doubt, true, had the sale been attacked while the title was held by Chas. H. Scriven, it might have been set aside.

It is urged that Haven, who acted for appellees, in taking the deed of trust, had notice of facts sufficient to put him upon inquiry, and that appellees, through him, are chargeable with notice that the sale was illegal.

We find no proof in the record that Haven had any actual notice that there was fraud in the sale, or unfair dealing on the part of Chas. H. Scriven in obtaining the title. It is, however, said, that Hervey, Anthony & Galt were attorneys of Scriven, and as such acquired knowledge of the illegality of Scriven's purchase, and afterwards were attorneys of Haven in examining the title, and that Haven is chargeable with all knowledge they had acquired while acting for Scriven.

The evidence shows that Hervey, Anthony & Galt were attorneys for Oldershaw in foreclosing the mortgage and making the sale of the property. Afterwards they were

250     CAMPBELL *et al. v.* BENJAMIN *et al.*     [Sept. T.

Opinion of the Court.

Scriven's attorneys in negotiating the loan of Haven, and as such Mr. Hervey gave a written opinion to Haven that the title in Chas. H. Scriven was good. But, conceding they were the attorneys of Haven, Hervey testifies that he knew nothing in regard to the illegality of the sale. Mr. Galt was present when the sale was made, and saw Wait make the purchase; but there is, no doubt, proof that he had knowledge that Wait was buying for Scriven. The evidence fails to show that Mr. Anthony had any connection with the transaction. So that it does not appear that these attorneys, when they examined the title, and the deed of trust was given, knew that there was fraud in the purchase by Scriven.

But even if they had obtained knowledge, while acting for Oldershaw or Scriven, that the purchase of Scriven was fraudulent, and afterwards, on being employed by Haven to examine the title, failed to communicate their information to him, but, on the other hand, pronounced the title good, Haven would not be chargeable with notice they had obtained in the discharge of professional services for the former. To establish a rule of this character would be manifestly unjust, and, in many cases, its effect would be disastrous upon the interests of parties who are compelled to employ attorneys.

But this question we regard as settled, by the case of *Mc-Cormick* v. *Wheeler*, 36 Ill. 114. See also *Dunlap* v. *Wilson*, 32 Ill. 517.

It is, however, said, the record showed enough to put Haven, the trustee, upon inquiry.

While it is true, the fact, appearing on record, that Wait purchased at the master's sale, and, on the same day, conveyed to Scriven, the defendant in the decree under which the sale was made, is calculated to cast some suspicion on the transaction, and, in connection with other facts pointing in the same direction, might be sufficient to put a subsequent purchaser upon inquiry, yet the existence of that fact alone can not be regarded as sufficient.

Aside, however, from this question, the relation of appellant Campbell to the debt of appellees, in a court of equity, should not be lost sight of, and must, necessarily, have a controlling influence in adjusting the equities of the parties. Campbell purchased the property of a grantee of the mortgagor Scriven, with full knowledge of the trust deed, and with the belief that it was a subsisting lien upon the premises; and while, in his evidence, he does not directly say he assumed the payment of appellees' debt, secured by the trust deed, yet it is but fair to presume, from his own testimony, that the amount of the debt of appellees was deducted from the purchase price he was to pay for the land, and its payment assumed by him.

It would be a novelty, in the purchase of real estate incumbered by a heavy mortgage, unheard of, to pretend that no agreement was made between the vendor and vendee in regard to who should assume and pay the incumbrance. And yet, such is the position to which Campbell is driven, unless he agreed to pay the incumbrance, for there is no pretense that it was to be paid by his grantor.

After Campbell's purchase, and after he became aware of the difficulty in regard to the title, Haven, the trustee, advertised the property for sale on the trust deed, for the purpose of collecting appellees' debt. In order to prevent a sale of the property at that time, appellant Glover, father of Campbell's wife, at Campbell's request, came forward and purchased of appellees a half interest in the debt and trust deed, paying therefor one-half of what was then due on the whole debt, and, by contract in writing, obtained the privilege of taking the other half, on the same terms, at any time within one year from the making of the contract, which bears date June 21, 1869.

The concluding part of the agreement has an important bearing on the rights of the parties. It provides, in case Glover failed to elect to take the other half of the debt, as agreed upon, then appellees should have full power and authority, (and, to use the language of the contract,) "without

any hindrance from me, to go on and foreclose the said trust deed, to make the balance due on the said note."

At the same date, appellant Campbell signed a written contract, by which he agreed to pay interest on the half of the debt held by appellees, from April 2, 1866, to the 21st day of June, 1870. This interest he paid, and subsequently, without any agreement, he paid the interest to December 21, 1871.

The question is, would it be equitable now to allow appellants to interpose the defense relied upon, after the making of a solemn agreement by them that appellees should have the right, without any hindrance from them, to go on and foreclose the trust deed ?

There was a consideration for the agreement. The facts in this case all considered, we do not think the defense relied upon can avail in a court of equity.

In regard to the third point made by appellants, we are of opinion it is well taken. The court find $3305 due appellees, and $4271.25 due appellant Glover. The decree provides that, upon default of payment by Campbell of the amount due both appellees and Glover, the premises shall be sold. It will be remembered that Glover filed no cross-bill, and neither asked nor desired affirmative relief, but, on the contrary, desired the bill dismissed. Under these circumstances it was erroneous for the court to decree the payment of money to Glover, when he asked no decree and desired none.

The decree will, therefore, be reversed, and the cause remanded, with directions to the court to enter a decree for the amount due appellees.

*Decree reversed.*