FERNANDO WOOD
vs.
JOHN PATTERSON AND THE
NASHVILLE INS. CO.

}MARCH TERM, 1850.

[PRACTICE IN CHANCERY—INJUNCTION—MISTAKE.]

UPON a motion to dissolve an injunction, the responsive averments of the answer in the absence of countervailing testimony are to be taken as true, and if the facts constituting the equity of the bill are denied by such positive responsive averments, the injunction must be dissolved.

Equity has jurisdiction to grant relief in cases where parties have done acts or entered into contracts under a mistake or ignorance of a material fact : and this power is not confined to cases where a fact has been studiously suppressed or concealed by one of the parties, but embraces many cases of innocent ignorance and mistake on both sides.

There are many cases in which parol evidence at the instance of the complainant may be received to rectify a contract in unity, and in which the contract so rectified will be specifically executed.

But if the mistake is the result of the party's own carelessness or inattention, the court will not interfere in his behalf, its policy being to grant relief to the vigilant, and to put all parties upon the exercise of a reasonable degree of diligence.

If the fact be unknown to the parties, or each has equal or adequate means of information in regard to it, and the parties have acted with good faith, equity will not interfere.

In this case an injunction was granted upon the averment in the bill, that defendant offered to compromise a balance appearing to be due the complainant by certain accounts rendered, by the payment of a certain sum, and that in the addition of these accounts there was an error of $1,000. The answer denied this allegation by averring that defendant's offer was made without any reference to the stated balance, but with reference to the details and items of the account, and to the grounds of the defendant's claims against complainant. HELD—That equity of the bill is sworn away by this answer and the injunction must be dissolved.

[An injunction was granted upon the bill filed in this case, and after answer, the cause was heard upon motion to dissolve. The facts of the case, and the allegations of the bill and answer are all fully stated in the following opinion of the Chancellor, delivered upon the hearing of this motion.]

THE CHANCELLOR:

The question, and the only question, presented on this motion is, whether the facts constituting the equity of the bill have been denied by the answer, because if so, and the denial is positive, the injunction must be dissolved according to the established law of the court.

The bill in this case alleges that in making up the accounts of the brig "Col. Howard," owned by the defendant, Patterson, an error was committed by the plaintiff's clerk, of one thousand dollars, to his disadvantage, in adding the charges in said account, which are $1388 09 to the disbursements and advances, which are $9855 43, making the sum total $10,243 52, instead of $11,243 52. That these accounts, with this error therein, were forwarded by the plaintiff from New York, without being examined by him, to Patterson, on the 9th of October, 1849, and that the complainant claimed from Patterson only the bal-

ance therein appearing to be due him, of $2219 45, when but for the error, this balance would have been $3219 45. That Patterson, thereupon offered to compromise this balance by paying the complainant the sum of two thousand dollars cash, and that for the purpose of an immediate settlement, and to save delay, he, the plaintiff, consented to take that sum in settlement of said balance, supposing that he was thereby abandoning only the sum of $219 45, and for the purpose of effecting this settlement, he sent to his agent, in the city of Baltimore, all the papers relating to said brig, together with the policy of insurance for $10,000, which Patterson had assigned to him by way of security for his advances, &c., to be delivered and reassigned upon payment of said sum of $2000. That on or about the 20th of December, 1849, the settlement was concluded, the money paid by Patterson, and the policy reassigned to him by the complainant's agent. That about this time, by an accidental examination of his leger, the complainant discovered this error in the account, and, thereupon, forthwith, telegraphed and wrote to his agent in Baltimore, and to the agent of the Insurance Company in that city, not to make the settlement or pay any money to Patterson, but the information did not reach Baltimore in time to prevent the settlement or the receipt by Patterson from the Insurance Company of a portion of the money due upon the policy though there still remains a large balance due thereon. That complainant has frequently since requested Patterson to rectify the error and pay him the sum of $1000, but this he refuses to do.

Upon this statement, and upont his alleged error and mistake, the complainant seeks to have the settlement opened and set aside, the balance due him paid, and in the mean time that the Insurance Company may be restrained by injunction from paying to Patterson the balance due upon the policy.

An injunction was granted to prohibit the company from paying the sum of $1000, but leaving it at liberty to pay to Patterson any surplus over that sum which might be due him.

The accounts which are filed as exhibits with this bill, and which are made up to the 8th of October, 1849, support its

28*

allegations in reference to the error in the addition, and that error being corrected, there would appear to be due the complainant the sum of $3219 45, instead of $2219 45.

The gravamen then of this bill, as I understand it, is, that the offer of Patterson to compromise the claim, was founded upon the balance appearing to be due by him upon the face of the account. The allegation being, "that said Patterson thereupon offered to compromise *this balance* with the complainant by paying him the sum of $2000 cash." Indeed, it would seem to to be very clear, that but for this allegation, the plaintiff would be without title to the interference of the court, for it could not very well be maintained that if the settlement in question was made without any reference whatever to the accounts furnished by the complainant, but was determined upon to avoid litigation and prevent delay, that it would be competent to this court to set it aside because one of the parties, by a subsequent examination of his books has become dissatisfied with it. And especially all pretence of *mistake* would be excluded if the account in which the mistake occurred was not the basis of this settlement.

But this allegation that the offer of the defendant to pay the two thousand dollars by way of compromise was made with a view to the balance appearing due from him by the accounts sent him by the complainant, is expressly and pointedly denied by the answer, which avers, "that the defendant did not make the said proposal with reference to said stated balance, but with reference to the details and items of the account and to the grounds of the defendant's claims against the complainant," as in the answer are stated. And again, "that it was from this view of the wrongs done to him by the complainant" (the particulars of which are set out in a previous part of the answer,) "and looking to these claims against the complainant as counter to the items set forth in his said account, and not for or on account of the balance now appearing to have been erroneously stated, that this defendant balancing against his rights and his wrongs at the complainant's hands, the evils of litigation and the consideration of said complainant having the assignment of

the policy of insurance on said vessel that the defendant proposed to pay the complainant in full settlement of all his claims and for an assignment back to the defendant of said policy, the said sum of $2000."

If, therefore, we are to give credit to the answer, and upon this motion, and in the absence of contervailing proof, the responsive statements of the answer must be credited, the balance appearing to be due from the defendant upon the accounts furnished him by the opposite party had nothing at all to do with his offer to pay the two thousand dollars, that offer being wholly irrespective of that balance, and founded upon an examination of the items comprising the account with many of which the defendant supposed he had just ground of complaint.

No doubt is entertained of the jurisdiction of this court to give relief to parties who have done acts or entered into contracts under a mistake or ignorance of a material fact. And the power of the court to grant relief in such cases is not confined to cases in which a fact has been studiously suppressed or concealed by one of the parties, which would amount to fraud, but it embraces many cases of innocent ignorance and mistake on both sides. For when the real intention of the parties has been disappointed by a mutual error in regard to a material ingredient in the contract, it is of the utmost importance that some court should have the power to correct the error and make the contract what it was really intended to be. About these principles there can be no dispute. 1 *Story's Eq.*, sec. 141, *et seq.*

And it is now settled in this state, that there are many cases in which parol evidence at the instance of the complainant may be received to rectify a contract in writing, and in which the contract so rectified will be specifically executed. The opinion of Mr. Chancellor Kent, in the case of *Gillespie* vs. *Moon*, 2 *Johns. Ch. Rep.*, 585, maintaining this doctrine, received the full sanction of the Court of Appeals in this state, in *Moale* vs. *Buchanan et al*, 11 *G. & J.*, 314.

It is not, however, in every case of mistake, even of a material fact, that the court will grant relief, for if the mistake is the result of the party's carelessness, or inattention, the court will not interfere his in behalf, its policy being to administer

relief to the vigilant and to put all parties upon the exercise of a reasonable degree of diligence. So if the fact be unknown to both parties, or in regard to which each has equal and adequate means of information, if in such cases the parties have acted with good faith, equity will not interfere. 1 *Story's Eq.*, *sections* 148, 149, 150.

It cannot, upon the state of this record as it now stands, be affirmed that the defendant has acted with bad faith. He swears his offer was made for the purpose of compromising a disputed account, and to avoid the evils of litigation. That he entertained objections well founded, in his opinion, to many of the items in the plaintiff's account, and that he had, as he believed, claims against the plaintiff counter to those which the plaintiff preferred against him. In this state of circumstances, and as he swears without any reference whatever to the balance appearing against him by the accounts sent him by the complainant, he made his offer of compromise, and surely in this, nothing indicative of bad faith can be discovered—nothing which looks like a disposition to overreach and take advantage of the complainant.

Nor do I find anything very material in the collateral circumstances pressed in the argument as manifestations of fraud. It must be recollected that the accounts in which the error occurred were forwarded by the complainant to the defendant on the 9th of October, 1849, and it was not until the 13th of the following month of December, that the latter wrote to the former, offering to pay him the sum of $2000, "with a view," (as expressed in his letter,) "to an immediate and amicable settlement, and in full of all demands, on receiving back the policy and other documents concerning the brig in the plaintiff's possession." In this same letter, the defendant speaks of sundry overcharges in the plaintiff's account, but not particularizing them, and waiving these he made the offer referred to. Now, it seems to me it cannot be very fair to infer that if the defendant designed to impose upon the plaintiff by leading him into a settlement in which he had detected the error in question, that he would have said anything calculated · to induce the complainant to a re-examination of it. He would, it seems to me, have said nothing

about errors or overcharges, which he might well suppose would result in the detection of the error, and thus frustrate the meditated fraud, but diverting attention from them, have made his offer in such terms as would not cause an investigation. Indeed, upon the supposition that he, the defendant, supposed the plaintiff would not be willing to give up more than $219 45, he had better, at once, have paid the whole balance appearing to be due by the account, than start objections which were most likely to lead to the discovery of the error.

It is said, however, that this letter of the 13th of December, from Patterson to the plaintiff, is indicative of unfairness, because it presses for an immediate reply. That this eagerness is suspicious, and the motive for it is supposed to be bad. But it must be borne in mind the letter was not written until more than two months had elapsed from the receipt of the accounts by him, which fact is not easily reconcilable with a disposition to perpetrate a fraud, as he might well suppose that within that time the error would be discovered. If, however, any inference unfavorable to the defendant may be drawn from the fact that he asked for an immediate reply to his letter, to what are we to attribute the unusual promptitude with which his offer was acceded to by the complainant? Patterson's letter making the offer was written in Baltimore on the 13th of the month, and on the 14th, the very next day, the plaintiff replied from New York, accepting the offer. There was, then, quite as much anxiety manifested on the one side as on the other, and I think that neither can, upon this ground, be suspected of a disposition to take advantage of the other.

Without proceeding further, or considering how far the complainant may be affected by, or be subject to, the charge of negligence in not discovering the mistake at an earlier period, especially when his account had been called in question, I shall pass an order dissolving the injunction upon the ground that the equity of the bill, so far as relates to the injunction, is sworn away by the answer.

W. PINKNEY WHYTE, for Complainant.
CHARLES F. MAYER, for Defendant.