(No. 4882. Decided July 19, 1905.)

B. P. ENO, *Respondent*, v. T. P. SANDERS, *Appellant*.[1]

APPEAL—REVIEW—FINDINGS—WEIGHT OF—EVIDENCE. Findings of the trial court in an equity case will not be disturbed on appeal where the supreme court is unable to say that the weight of the evidence is against the conclusion reached below.

ESTOPPEL—LACHES—DELAY IN BRINGING SUIT—INCREASE OF VALUES. Mere delay, short of the statute of limitations, will not bar an action in equity to recover an interest in a mining claim that meanwhile had greatly increased in value, when the fact of plaintiff's claims was at all times known, and there was no deceit or

1Reported in 81 Pac. 696.

bad faith, and the increase in value was not due to development at the cost and risk of the defendant, but plaintiff was engaged in the development and was in a position to lose as much as the defendant in case of failure.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered June 1, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover an interest in a mine. Affirmed.

*Shank & Smith,* for appellant.

*J. N. Phillips* and *Dorr & Hadley,* for respondent.

FULLERTON, J.—In the summer months of the year 1900, one T. F. Jeffrey and three others discovered some five mining claims, in the Mount Baker mining district, and located the same under the mining laws of the United States. The claims as located were contiguous to each other and constituted a group, and are known in the record as the Excelsior group. Jeffrey also owned, at that time, an undivided two-sevenths interest in another group of claims, called the Bonanza group. On October 25, 1900, Jeffrey sold to the appellant, Sanders, one-fifth of his interest in the Excelsior group, and two-sevenths of his interest in the Bonanza group, giving him at that time a memorandum in writing, of which the following is a copy:

"Seattle, Wash., Oct. 25th, 1900.

"Received from T. P. Sanders per A. D. Cameron the sum of one hundred dollars in full for ball of amount on two-sevenths (2-7) interest on the Bonanza Group also one-fifth Int. in the Excelsior Group situated in Whatcom Co. state of Washington. T. F. Jeffrey."

On March 9, 1901, the appellant sold to the respondent, Eno, all the interest in both groups of claims that he had acquired from Jeffrey, executing and delivering to him a bill of sale in the following language:

"For and in consideration of the sum of Two Hundred and fifty (250) dollars, I hereby sell, transfer, assign, and

warrant to B. P. Eno a 2-7 interest of T. F. Jeffrey interest in the Bonanza Group, consisting of nine (9) claims, and a one fifth interest of T. F. Jeffrey interest in the Excelsior Group consisting of five (5) claims, situated in Whatcom County and State of Washington; being the same interest assigned to me by T. F. Jeffrey, the original of which is hereto attached, and said instrument being dated Seattle, Wash., October 25, 1900, and recorded January 28, 1901, at 8:50 A. M. in Vol. 5 of M. C., page 523 in the records of Whatcom County, State of Washington.

"These claims are located in Whatcom county, state of Washington, and are known as the Bonanza group of nine claims; & the Excelsior Group of five claims, all of which are on Record in said County and State. The title to which I hereby warrant and defend to the interests of the said B. P. Eno as set forth in said instrument hereto attached.

"In Witness Whereof I have hereunto set my hand this 9th day of March, 1901. T. P. Sanders."

While the matter remained in this condition the owners of the several claims decided to form corporations to take title to and work the same; and to that end incorporated the Great Excelsior Mining Company, and transferred to it the group of claims known as the Excelsior group, and also incorporated the Hoosier Mining Company, and transferred to it the Bonanza group of claims. The stock of the respective corporations was treated as fully paid up by the transfers so made, and, after deducting a certain amount to be sold as treasury stock, the remainder was directed to be distributed to the owners of the several interests in the claims in the proportion that such several interests bore to the amount distributed. The distributive shares belonging to the appellant and respondent were issued in the name of, and delivered to, the appellant, who turned over to the respondent such part thereof as he contended the respondent was entitled to by reason of the bill of sale before referred to. The respondent conceived that he had not received his just proportion, and brought this action to

compel the appellant to deliver to him the balance claimed
by him. After a trial of the issues between the parties, the
court found that the appellant had given him such propor-
tion of the stock in the Hoosier Mining Company as his
interest represented, but that he was the owner of a one-fifth
of one-fourth in the Excelsior group, and entitled to 50,000
shares of the capital stock of the Great Excelsior Mining
Company, and that the appellant had turned over to him only
25,000 shares thereof. A decree was entered directing that
the remainder be delivered. This appeal is from that decree.

The appellant, in this court, makes two principal con-
tentions. He contends, first, that it was understood between
the appellant and respondent, at the time the bill of sale
was executed, that a one-fortieth interest instead of a one-
twentieth interest in the Excelsior group of mining claims
was conveyed thereby, and that the parties by their subse-
quent conduct construed the transfer in that way; and, sec-
ond, that, inasmuch as the respondent did not bring this
action until some two years after the sale was made, he is
guilty of laches, and ought not now to be permitted to
recover.

The first question is not entirely free from difficulty. The
bill of sale from the appellant to the respondent describes
the interest conveyed in the claims here in question, the
Excelsior group, as a one-fifth interest of the Jeffrey in-
terest, which, it goes on to recite, is the same interest the
appellant acquired from T. F. Jeffrey. Turning to the loca-
tion notices, which were offered in evidence, it is found that
each of them is signed by four persons as locators, of which
Jeffrey was one. The legal presumption would therefore be
that he was the owner of a one-fourth interest in the group,
and the conclusion reached by the trial court would seem
to be justified. But the appellant contends that Jeffrey's
interest in the claims, instead of being a fourth, was an
eighth, for the reason that he had furnished Jeffrey with

16—39 WASH.

a grub-stake, under an agreement that he was to have a one-half interest in any such property as Jeffrey should acquire during the prospecting trip in which the claims were discovered and located. He further shows that the parties entered into a written agreement at the time it was agreed to form corporations, in which the interest of the respondent in the Excelsior group was described as a one-fortieth interest.

Jeffrey, however, denies that he was prospecting on a grub-stake at the time the claims were located, and insists that he owned a quarter, instead of an eighth, interest in them at the time he made the sale to the appellant. Other circumstances shown in the record, it seems to us, support this contention, and we think the weight of the evidence is with it. In explanation of his act in signing the incorporation agreement mentioned, the respondent testified that, when the agreement was first presented to him at the mines, he refused to sign it, because it did not correctly represent his interests, and that later on the appellant came from Seattle to the mines for the purpose of procuring his signature, when a conversation was had between them which he relates in the following words:

"He asked me why I didn't sign these papers, when he sent them up by Mr. Cameron. I told him, because they didn't set forth my interest, and he says, 'why, you are retarding the Company, you are holding it back by not signing these papers,' and he said, 'it won't make any difference, there is simply an agreement to incorporate, it won't make any difference with your interest.' I said, 'I don't like to sign anything that I don't understand and I refuse to sign away my rights in any way.' He says, 'You located the Lizzie B and the water right.' I said, 'Yes.' 'Well,' said he, 'I will give you 6,250 shares of stock more for your interest in the Lizzie B and the water right, if you will sign these papers.' I said, 'Very well, I will sign these papers, but I don't want to sign away my rights.' That was the condition under which my signature was placed here."

This agreement, it will be remembered, was not, and did not purport to be, a conveyance of any interest in the mines from the respondent to the appellant, nor does the appellant now claim it to be such. He simply introduced it in evidence as tending to show an admission on the part of the respondent to the effect that his interest in the claims was a one-fortieth, instead of a one-twentieth, as he was then claiming. But as the amount of this interest had all along been a matter of dispute between the parties, and as the respondent orally stated to the appellant at the time he signed it that it did not correctly represent his interest, it can scarcely be entitled to weight as an admission. Other circumstances and conversations are shown by each of the parties tending to support their respective contentions, which we shall not attempt to review. On the whole, we are unable to say that the weight of the evidence is against the conclusion reached by the court on this question, and, under the rule we have uniformly followed in such cases, we will not disturb the court's findings.

The second contention of the appellant is based on the fact that the claims, between the time the respondent acquired his interest and the time he began his action, had developed from a mere prospect, having a speculative value only, to a mine having a market value of something like a quarter of a million dollars; and it is argued that it is unconscionable and inequitable, in view of this fact, to allow the respondent to assert claims that he probably would not have asserted had the property not increased in value.

Doubtless if the respondent had stood by and allowed the appellant to develop the property at his own cost and risk, in the belief that his interests were what he claimed them to be, equity would not have allowed the respondent to assert his claim, after so long a delay and after the property had so changed in value, but such are not the facts as shown by this record. The respondent engaged with the appellant in the development of the mine. He was in a position to

lose, in case the venture should prove a failure, as much, if not more proportionally, than was the appellant. The appellant knew at all times what the respondent's contentions respecting his interests were, and could have had them determined by suit at any time he so desired. There was no deceit, bad faith, or even wrongful motives shown on the part of the respondent, and under such circumstances his right of action would not bar short of the statute of limitations, and there is no contention that the statute of limitations has run against his right of action.

As we find no error in the record, the judgment appealed from will stand affirmed.

MOUNT, C. J., RUDKIN, CROW, and DUNBAR, JJ., concur.