## COGGINS & OWENS *vs.* SUSAN B. CAREY ET AL.

*One Owner of a Party Wall not Authorized to Make Openings Therin —Injunction Requiring Windows Opened in Party Wall to be Closed Reformation of Deed for Mistake.*

The owner of half of a party wall between his lot and the adjoining lot is not authorized to open windows in such wall, whether the adjoining owner intends to use that part of the wall or not.

An injunction will be granted to restrain one of the owners of a party wall from opening windows in the same; and if such openings have been made without authority, a mandatory injunction will issue requiring the windows to be closed, and the wall to be made solid as a party wall should be.

The owner of a warehouse and lot of ground conveyed to the owner of the adjoining lot one-half of the ground on which one of the side walls was erected and one-half of the ground extending from the end of the wall to the end of the lot and of the width of the wall, by a deed which provided that the walls should be used as a partition wall between the grantor's building and the warehouse about to be erected by the grantee; also that if the grantee should desire to extend the wall in length or add to the same in height, such extension or addition should be made at the expense of the grantee, and that the grantor should have the right to use the same as a party wall. The grantee extended the wall to a greater depth and opened windows in the extended part overlooking the rear of the grantor's lot. *Held*, that the extension of the wall made by the grantee was a party wall, and that a mandatory injunction should issue requiring the grantee to close such openings.

The contract between the parties by which a strip of ground was to be conveyed on part of which a wall between the lots of the grantor and grantee was erected, with the right to use the same as a party wall provided as follows: "If the purchasers desire the wall to run to a greater depth than the north wall now standing, said wall is to be erected entirely at their expense, and in the same line and of the same thickness as the wall now standing, with the privilege to the seller to use this new part of said wall at any time as a party wall without any additional cost or charge therefor." In the deed executed in pursuance of this contract, the sellers were designated as the parties of the first part, and the purchasers as the parties of the second part and the deed provided as follows: "If the parties of the second part desire to erect their wall to a greater depth * * the said wall is to be erected entirely at the expense of the parties of the second part, and in the same line and of the same thickness as the wall now standing, with the privilege to the parties of the second part to use this new wall without any additional costs or charges therefor." The evidence clearly showed that the words "parties of the second part" in the latter half of this clause were used by mistake of the draughtsman instead of the words "parties of the first part." It was accordingly decreed that the deed should be reformed so as to correct this mistake, and express the real agreement.

*Decided May 17th, 1907.*

Appeal from the Circuit Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Francis T. Homer* and *James McEvoy, Jr.*, (with whom was *George R. Willis* on the brief ), for the appellants.

*J. Bannister Hall, Jr.*, and *James Piper*, for the appellees.

ROGERS, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court of Baltimore City. The subject matter of the appeal, is a deed and agreement, entered into between the parties to this suit on May 2nd, 1905. The deed in question conveyed to the appellants, Coggins and Owens, a strip of land ten and one-half inches (10½ in.) wide, and one hundred and sixty eight and one-half feet (168½ ft.) long on the east side of Charles street; ninety-three feet (93 ft.) five inches (5 in.) south of German street, in the city of Baltimore. The deed contained certain covenants and conditions, relating to the use of a wall standing one-half on the land of the appellees, and one-half on the land conveyed to the appellants, and to the respective rights of the parties in subsequent extensions upward and eastward of this wall.

The appellees (plaintiff's below) contended that the whole of this wall, that already erected, and that part erected subsequently to the making of the deed of May 2nd, 1905, was a party wall, and that the appellants (defendants below) had no right to open and maintain windows in this party wall, and further, that there was a typographical error in the deed which should be corrected in order to express the understanding and agreement of the parties.

After testimony taken in open Court, and argument by Counsel the full relief prayed was granted with costs to the appellees, and it is from this decree that the present appeal is taken.

The testimony shows that the appellees had erected sometime prior to April, 1905, on a lot in Baltimore City, known as 21 South Charles Street, a three-story warehouse. That the appellants, who owned the vacant lot adjoining that of the appellees approached Mr. James Carey, sometime in April, 1905, with a proposition to buy a strip of land ten and one-half inches wide on the north side of appellee's property, which strip of land ran to the centre line of the north wall of the warehouse then standing, and therewith acquire one-half of the north wall of the appellee's warehouse. After some short delay the appellees offered to sell for $2,500 dollars, but

the appellants only offered $1,500 dollars. The appellants then by letter of April 1st, 1905, offered to buy for $1800 dollars the land. The appellees made a counter proposition on April 4th, 1905, to sell the 10½ inches of land for the sum of $1,800 dollars, provided certain conditions and covenants were inserted in the deed. Let us look at these letters.

April 1st, 1905. Mr. Francis K. Carey, City. Dear Sir. In regard to the use of the north wall of No. 21 South Charles street, in the construction of our warehouse on Lot No. 19, with reference to which the writer called upon you yesterday morning, would say, we have talked the matter over between ovrselves, and have conferred with several builders. Without exception they all state that the usual custom in circumstances of this kind, is for the buyer to pay one-half of the cost of building the wall and to buy half of the ground, at the price per front foot that ground in the vicinity is bringing. The offer of $1,500 made you about conforms to this custom. After due consideration we have concluded that the use of the wall, and the purchase of ten and one-half twelfths (10½ twelfths) front feet of your ground, would be worth $1,800 to us. And we hereby offer you this amount for the concessions we ask. We request that you take immediate action and give us your decision as early as convenient. Yours truly,

Coggins & Owens,
F. V. Coggins.

To which appellees replied as follows: 21 S. Charles St. Partition wall. Messrs. Coggins & Owens, 102 North Frederick Street, Baltimore, Md. Gentlemen: I acknowledge receipt of your letter of April 1st, 1905 in above matter. I am authorized by the owners of the lot adjoining your lot on the south, to say, (here follows description of the land) including the right to that part of brick wall which is now erected on said strip, upon the following conditions which are to be made part of the transfer and to run with the land:

*First.* That the brick wall, part of which will be located on said strip and the balance on the remaining land of the sellers, shall be used as a partition wall between the warehouse now erected on the lot belonging to the sellers and the warehouse to be erected on your adjoining lot. If purchasers desire wall to run a greater depth than the north wall now standing, said wall is to be erected entirely at their expense, and in the same line and of the same thickness as the wall now standing, with

the privilege to the sellers to use this new part of said wall at any time as a party wall, without any additional cost or charge therefor.

*Second.* That in case you elect to build your wall higher than the north wall of the warehouse belonging to the sellers, the right is reserved to the sellers, if they hereafter add to the height of their warehouse, to use said additional wall as a party wall, without any additional cost to them.

*Third.* That in case either the warehouse belonging to the sellers or the warehouse to be erected by you is so far destroyed by fire as to either cause the destruction of said partition wall or necessitate its being taken down, it shall be immediately rebuilt at the joint cost of the owners of the lot now owned by the sellers and the owners of the lot now owned by you, and in case either has to build at his expense, the other shall not use said wall until he shall pay his proportionate part of the cost of the same, which proportionate part of said cost shall be due and payable within thirty days (30) after the completion of said wall.

*Fourth.* If, in the erection of your warehouse, any injury is done to the said wall or to the warehouse owned by the sellers, or its contents, the cost of such injury is to be paid by you and you are to guarantee the sellers against all loss or injury which may happen to them, by reason of the use by you of the said wall as a partition wall.

*Fifth.* You are to pay to the sellers the sum of eighteen hundred dollars ($1800) in cash, upon the execution and delivery of the deed which is to be prepared by you in a manner satisfactory to me, for the purpose of carrying out the above conditions. The title to the land to be in fee simple and marketable, subject to the easement on the twenty (20) feet in the rear of Wine alley, which easement prevents the erection of the party wall on this part of the lot; and if the title is not satisfactory to your attorney, the transaction will be declared off and all parties released from any obligation. In reference to the price of eighteen hundred dollars ($1,800) the sellers did not think they would consider a lower figure than two thousand dollars ($2,000) but have now decided to accept this figure, with the conditions contained in this letter.

*Sixth.* The transaction is to be completed within thirty (30) days from the date of this letter.

You will observe, of course, that the hesitation we feel about the matter is due to the fact that we have already narrowed our lot by building our north wall entirely on our land. If

the wall is at any time destroyed and you or the then owners of your lot should take the same position with us that was taken by the Diamond Match Company and should refuse to unite in the erection of a partition wall, we would have to build the wall again entirely upon our own property and would narrow our lot by nearly a foot more, which would be out of the question. We, therefore, wish the transaction to take such shape as to give permanancy to the partition wall without regard to the plans of either party. In other words, we wish to have an absolute guarantee running with the land, that in case the wall is destroyed, a similar wall will at once be erected on the same ground, at the joint cost of the owners of the two lots. Very truly yours,

                                    Francis K. Carey.

Answer of Coggins & Owens.

                        Baltimore, Apr. 7, 1905.
Mr. Francis K. Carey,
    Calvert Building,
        City.
Dear Sir:—

We beg to acknowledge receipt of your proposition. We have turned your letter over to our Attorney Mr. Horton S. Smith, who will investigate the Title and arrange the transfer. We wish to thank you for having given this matter your prompt attention and we appreciate your efforts in our behalf. Again thanking you, we are,

                        Yours truly,
                            Coggins & Owens.

In October of 1905 Francis K. Carey addressed the following letter to appellants.

                                    Oct. 30, 1905.
Estate of James Carey,
    Party Wall 21 S. Charles Street.
Messrs. Coggins & Owens,
    Baltimore, Maryland.
Gentlemen:

My brother called my attention to the fact that in building your warehouse adjoining the warehouse owned by the estate of James Carey, you have opened windows in the party wall overlooking the rear of our lot adjoining you on the south.

Under the agreement of May 2nd, 1905, between your firm and the estate of James Carey, no such right was reserved to you and, it is necessary that the matter should be

given your immediate attention, I will be glad to have a talk with you at my offices if you will make an engagement with me by telephone.    There are serious practical reasons why it is out of the question for these windows to remain, which I will be glad to explain to you when we meet.

Very truly yours,

Francis K. Carey.

Then followed several letters between Mr. Willis, counsel for Coggins & Owens, and Mr. Carey which resulted in a declination on the part of Messrs. Coggins & Owens to close the windows.

On the 21st of December, 1905 the appellees filed their first bill of complaint; in which after setting forth substantially the facts above recited and complaining of the thirty windows inserted in the extended wall and the injury resulting therefrom to them, and that they are deprived of so much of their land as is used for one half of said wall as extended easterly from the northwest corner of their warehouse without any benefit to them, the said appellees, and that the opening of the windows seriously depreciates the commercial value of their appellees property and its salability, and they pray for a Mandatory Injunction and general relief, and file as an exhibit a deed between the parties dated May 2nd, 1905 which is in these words:

"This Deed made this second day of May, nineteen-hundred and five by and between Susan B. Carey under and by virtue of the powers conferred upon her by the last will and testament of James Carey deceased which is recorded in the office of the Register of Wills of Baltimore County in T. W. M. No. 72, folio 466, etc.    Susan B. Carey, life tenant, Thomas K. Carey, John E. Carey, James Carey, Jr., A. Morris Carey, Francis K. Carey and Susanne C. Allison remaindermen, being all of the devisees under the will of James Carey aforesaid, as parties of the first part and Frank V. Coggins and William A. Owens co-partners trading as Coggins & Owens as parties of the second part.    Witnesseth that whereas the parties of the first part are the owners of Lot No. 21 on the east side of South Charles Street in the City of Baltimore and the parties of the second part are the owners of the lot adjoing on the north and known as No. 19 South Charles Street

the dividing line being seventy-one feet eleven and one-half inches southerly from the south east corner of South Charles street and German street and running thence easterly to Wine Alley; and Whereas to enable the parties hereto to use a wall now standing in the northern most outline of lot No. 21 as a party wall and to insure its use forever, as a party wall between the warehouse now standing on lot No. 21 and the warehouse to be erected upon lot No. 19 these are executed. Now therefore in consideration of the foregoing and of the further consideration of the sum of eighteen hundred dollars ($1,800) paid by the parties of the second part to the parties of the first part prior to the delivery hereof and the performance of the covenants and agreements hereinafter set out to be performed by the parties hereto the said Susan B. Carey under and by virtue of the powers conferred upon her by the will of James Carey, deceased, Susan B. Carey life tenant, Thomas K. Carey, John E. Carey, James Carey, Jr., A. Morris Carey, Francis K. Carey and Susanne C. Allison, the devisees under the said will do grant and convey subject to the said covenants and agreements unto Frank V. Coggins and William A. Owens, copartners, trading as Coggins & Owens, their heirs and assigns in fee simple all that lot of ground lying and being in Baltimore City and more particularly described as follows: (Here follows a description of the property as heretofore mentioned.) Together with the buildings and improvements thereon erected and all and every the rights, alleys, ways, waters, privileges and appurtenances to the same belonging or in any way appertaining. To Have and To Hold the above described and mentioned lot of ground together with the portion of the said wall standing and the rights and privileges and appurtenances thereto belonging unto and to the use of the said Frank V. Coggins and William A. Owens, co-partners, trading as Coggins & Owens, their heirs and assigns, in fee simple, subject however to the operation and effect of the following conditions and covenants (which is intended and expressly agreed shall run with and bind the land hereby conveyed and shall be kept by each and all the persons owning or occupying the two adjoining lots aforesaid) whereby the said parties of the first part for themselves their heirs, executors, administrators or assigns covenant by to and with the parties of the second part their heirs, executors, administrators or assigns and the said parties hereto of the second part for themselves their heirs, ex-

ecutors, administrators and assigns covenant by to and with the parties hereto of the first part their heirs, executors, administrators or assigns in manner following that is to say:

1. That the brick wall part of which will be erected and located on the strip of land hereby conveyed and the balance of the land of the parties of the first part shall be used as a partition wall between the warehouse now erected on the Lot No. 21 belonging to the parties of the first part and the warehouse to be erected on the Lot No. 19 belonging to the parties of the second part and if the parties of the second part desire to erect their wall to a greater depth eastwardly from Charles street than the present wall now standing on Lot No. 21 the said wall is to be erected entirely at the expense of the parties of the second part and in the same line and of the same thickness as the north wall now standing on Lot No. 21 with the privilege to the parties of the second part their heirs, executors, administrators and assigns to use this new wall without any additional costs or charges therefor.

2. In case the parties of the second part elect to build a wall higher than the north wall now standing on Lot No. 21 the right is reserved to the parties of the first part their heirs, executors, administrators and assigns if they hereafter desire to add to the height of their warehouse to use the additional wall without further cost to them.

3. That in case either the warehouse belonging to the parties of the first part on Lot No. 21, or that belonging to the parties of the second part on Lot No. 19, shall be destroyed by fire so as to cause the destruction of the party wall or to necessitate its being taken down it shall be immediately rebuilt at the joint cost of the owners of the lot now owned by the parties of the first part and the owners of the lot now owned by the parties of the second part and in case either has to rebuild at his expense the other shall not use the said wall until he has paid his proportionate amount of the cost of the same which proportionate part of the cost shall be due and payable within thirty (30) days after the completion of the said wall.

4. That if in the erection of the warehouse on Lot No. 19 any injury is done to the wall or warehouse of the parties of the first part or its contents the cost of such injury shall be paid by the parties of the second part and also any loss or injury sustained by the parties of the first part by reason of the use of the said wall as a partition wall and the said parties of

the first part hereby covenant that they will warrant specially the property hereby conveyed and that they will execute such other and further assurances of the same as may be requisite. Witness the hands and seals of the parties hereto. Which is duly signed by all the parties. Witnessed, acknowledged and recorded.

The appellants answered this bill and admit the allegations contained in paragraphs 1, 2, 3 and 4, and as to 5, 6 and 7 admit placing of the windows but deny that they project through and over the centre line of said wall or that any damage accrues to the plaintiffs and further allege that plaintiffs were advised of their intention to so place said windows and that plaintiff's did not object.

The defendants filed an amended answer denying the allegations of the plaintiff's third paragraph and stating that the wall was to be in the nature of a party wall, and also deny that plaintiff's have any right to use any part of the wall to be erected as a party wall. On June 9th, 1906, the complainants filed an amended bill praying that the deed of May 2nd, 1905, may be altered and reformed by the striking out of the word "second" and inserting "first" for the purpose of making the said deed conform to the true agreement which was entered into between the parties hereto, and that it may be decreed that the complainants, their heirs, executors, administrators and assigns shall have the privilege to use the new wall erected without any additional cost or charge therefor, for a mandatory injunction and general relief.

To this amended bill the defendants made answer, denying specifically the several allegations of the amended bill.

It will be observed from a careful reading that this controversy has arisen from the fact that in preparing the deed from the letter of April 4th, 1905, the words parties of the "first part" and parties of "the second part" have been substituted for the words "sellers" and "purchasers" used in that agreement. There is no doubt in our minds that the decree signed by the learned Judge below which granted the relief prayed should be affirmed.

We have been able to reach no other conclusion from the

letter of April 4th, 1905, the testimony in the record, and the situation of the respective properties, that the deed should be reformed and corrected so that the first paragraph thereof, containing the covenants and conditions shall read as follows. "That the back wall, part of which will be erected and located on the strip of land hereby conveyed, and the balance on the land of the parties of the first part, shall be used as a partition wall between the warehouse now erected on the Lot No. 21 belonging to the parties of the first part and the warehouse to be erected on the Lot No. 19 belonging to the parties of the second part; and if the parties of the second part desire to erect their wall to a greater depth easterly from Charles street than the present wall now standing on Lot No. 21 the said wall is to be erected entirely at the expense of the parties of the second part, and on the same line and of the same thickness as the north wall now standing on Lot No. 21, with the privilege to the parties of the first part their heirs, executors, administrators and assigns to use this new wall without any additional costs or charge therefor."

In *Barry* v. *Edlavitch*, 84 Md. 111, JUDGE PAGE, delivering the opinion of this Court, says: "The term party wall is usually applied to such walls, as are built on the land of another, for the common benefit of both, in supporting timbers, used in the construction of contiguous buildings. And a division wall may become a party wall by agreement, either actual or presumed."

In *Graves* v. *Smith*, 87 Ala. 451, there was an agreement, which in terms created a party wall, with the right to the appellant to use the same, "in the erection of any building which he may wish to build on his own lot." The Court held under these circumstances that the cross-easement of appellee was "violated by the attempt of the defendant to create openings for the windows." So in *Brooks* v. *Curtis*, 50 N. Y. 642, the language of the deeds and the acts of the parties show that it was their intention that the wall, which stood one-half on each lot, should be a party wall for the common use of both lots, and that such an easement included the right to increase the

height of the wall, provided it be done without detriment to the strength of the wall or to the property of the adjacent owner. So in *Brown* v. *Werner*, 40 Md. 20, JUDGE ROBINSON says, without attempting a precise definition of the term *party wall*, it is sufficient to say, that ordinarily, it means a wall built partly on the land of one and partly on the land of another, for the common benefit of both, in supporting timbers used in the construction of contiguous buildings. 22 *Am. & Eng. Ency. of Law*, 237; *Dorsey* v. *Habersack*, 84 Md. 117.

In *Dorsey* v. *Habersack*, 84 Md. 126, this Court said: "A division wall may become a party wall by agreement, either actual or presumed, and although such wall might have been built exclusively upon the land of one." 40 Md. 20.

In this case the land and a wall already erected and the right to build an extension of wall was purchased as a party or division wall and the consideration agreed upon by the parties paid. Ascertaining the intention of the parties from the written instrument, as we must do, it is perfectly manifest the appellees intended to sell and the appellants intended to buy the standing wall of appellees' warehouse as a party wall. If there could be any doubt about it, the recital in the agreement would seem to settle it, as it says, "That the brick wall, part of which will be located on said strip and the balance on the remaining land of the sellers, shall be used as a partition wall between the warehouse now erected on the lot belonging to the sellers and the warehouse to be erected on your adjoining lot. If purchasers desire wall to run to a greater depth than the north wall now standing, said wall is to be erected entirely at their expense, and in the same line and of the same thickness as the wall now standing, with the privilege to the sellers to use this new part of said wall at any time as a party wall, without any additional cost or charge therefor." Again, "That in case you elect to build your wall higher than the north wall of the warehouse belonging to the sellers, the right is reserved to the sellers, if they hereafter add to the height of their warehouse, to use said additional wall as a party wall, without any additional cost to them." And again if said wall

shall be destroyed "it shall be immediately rebuilt at the joint cost of the owners of the lot now owned by the sellers and the owners of the lot now owned by you." So we think there can be no reasonable doubt as to the fact that these parties intended that this should be a party wall.

But the appellants claim because the deed says, "With the privilege to the parties of the *second* part their heirs, executors, administrators and assigns to use this new wall without any additional costs or charges therefor," was inserted in the deed instead of the "*first*" part the appellees are bound by the same, having signed and delivered the same to the grantees, after ample opportunity had to examine the same.

Why, or how the mistake was made we know not, but we are clearly of opinion after reading the agreement of April 4th, the testimony in the record, and considering the relation in which the parties stood to each other, the subject matter, and the objects to be obtained, by the sale and purchase, that · the decree of the Court below should be affirmed. Unless we correct the mistake made in the deed by changing "second" to "first" the deed is very confusing and meaningless. If the wall is erected entirely at the expense of the parties of the second part, why should the deed then say with privilege for them to use it without additional cost or charge therefor? What other cost or charge except the cost of the wall could the privilege of using the wall impose? It is apparent on the face of the deed that the privilege of using the wall was clearly meant to be given to the sellers without cost in order to make it plain that they were not expected to contribute anything towards the cost of the erection of the wall in return for the use of it. The third paragraph we think throws some light on this view, which says in the case of its (the walls) destruction by fire each party is to pay one-half of the costs. If the reconstructed wall is to be a party wall certainly the wall it is to replace must have been a party wall. No right to place windows is reserved.

Assuming the deed should be corrected, and we think there is ample proof in the record to support the assumption, will equity grant the relief asked?

The powers of Courts of equity to reform upon parol evidence mistakes in deeds is so well settled that it may be assumed as a concession in this case. The only difficulty is in questions of this character, the certainty and extent of the proof required to establish the mistakes. While there is found much conflict in the cases upon this point outside of our own State, the rule here is that only *such full and strict evidence is required as will be sufficient to satisfy the mind of the Court."* *Coale* v. *Merryman*, 35 Md. 382. It is conceded, indeed it could not be denied that Courts of equity have jurisdiction in cases of mistakes, and it is equally well settled, that if parties, come to a settlement upon terms mutually agreed upon and error or mistake occur in the settlement, a Court of equity will entertain a bill to rectify the settlement and make it conform to the intention of the parties, and it was also decided that "it was competent for a plaintiff who sought the specific performance of an agreement in writing to vary it by parol proof upon the ground of mistake and then after having it thus corrected to insist upon its execution" and this is so, "even when the answer of the defendant denied the mistake." *Gill* v. *Clagett*, 4 Md. Ch. 470; *Cook* v. *Husbands*, 11 Md. 510.

The amended bill alleges clearly and fully that a mistake was made by the insertion of the words "party of the second part" instead of party of the "first part" in the deed of May 2nd, 1905. That this was a mutual mistake we think is borne out by the testimony. The plaintiff's certainly claim it ought to be party of the "first part." The written agreement of April 4th, most conclusively bears it out, and Mr. Owens in his testimony says he called Mr. Smith's attention to the fact that the insertion of party of the "second part" seemed to him to be meaningless, but was told it was for his protection. The general rule is thus stated in *Bisphams Equity*, sec. 469. "A person who seeks to rectify a deed on the ground of mistake must establish in the *clearest and most satisfactory manner*, that the alleged intention to which he desires it to be made conformable continued concurrently, in the minds of all parties,

down to the time of. its execution, and must be able to show exactly and precisely the form to which the deed ought to be brought.''

Here we have the agreement of April 4th and the testimony of Mr. Owens and the declarations of Mr. Carey. And in *Adams Equity*, 169, 170, it is said: "It seems however that the instrument may be corrected if it is admitted or proved that it has been made in pursuance of a prior agreement, by the terms of which both parties meant to abide, but with which it is in fact inconsistent; or if it is admitted or proved that an instrument intended by both parties to be prepared in one form, has by reason of some undesigned insertion or omission been prepared and executed in another. *So again when a solicitor, being instructed to prepare a settlement of a particular sum, inserted by mistake double the amount, and` the settlement was executed without discovery of the mistake, a bill was sustained to rectify it.*" These general principles have been frequently announced by this Court and elsewhere. *Keedy* v. *Nally*, 63 Md. 311; *Bank* v. *Wrightson*, 63 Md. 81; *Wood* v. *Patterson*, 4 Md. Ch. 335; *Boulden* v. *Wood*, 96 Md. 336.

Assuming this to be a party wall throughout its entire length and heighth, and that the appellees have the right to use all or any part of this wall at any time without expense, it is well established in law that the wall should have been a solid or blank wall. Apart from the legal aspect of a party wall, the deed, speaking of the wall, says it must be erected "in the same line and the same thickness as the north wall now standing on Lot No. 21."

The maintenance of windows by the owner of a party wall against the objection of the other is inconsistent with the title and right of the latter. By usage the words "party wall" and "partition wall" have come to mean a solid wall. *Jones on Easements* sec. 687. One may be enjoined from making openings for doors or windows in a party wall though there is neither allegations nor proof that the other owner intends ever to use the wall. Whether the other party intends to use the wall or not is quite immaterial since he has acquired a valuable

right in the wall which might be the subject of a sale or transfer, and he should be protected in this right. *Ibid*, sec. 688.

One of the uses of a party wall is to afford a complete division between adjoining buildings, and the opening of windows in such a wall is an injury with redress by injunction. *Ibid*, sec. 690.

In the next place it (a party wall) is intended to serve the purposes of a complete division between adjoining houses. This forbids the construction of spaces in it which do not divide. It is no answer to say that the dominant owner stands ready to fill up the openings whenever the servient owner desires to use the wall as a party wall. That very statement admits that it has not been maintained as a party wall, and the servitude only renders lawful occupation an actual party wall. *Ibid*, 691. In *Graves* v. *Smith*, 87 Ala. 450, it is said a party wall must ordinarily be construed to mean a solid wall without windows or openings—quoted in 84 Md. 95, 79 Hun. 376.

As to the propriety of asking for a mandatory injunction, in this case it seems to be well settled that it is the proper remedy. *High on Injunctions* says, But the rule is well established that an injunction is the appropriate remedy to prevent an adjacent owner of real property from opening or using windows through a party wall between the premises. And a mandatory injunction may properly be granted requiring the closing up of the windows already opened. And in such case the injunction will be broad enough to compel the defendant not merely to patch up the openings, but to make the wall solid as a party wall should be. *High on Injunction*, sec. 332; *Jones on Easements*, 724.

It follows from what we have said the decree of the Circuit Court of Baltimore City passed in this case must be affirmed.

*Decree affirmed, with costs to the appellees above and below.*