[No. 10772. Department Two. February 24, 1913.]

C. W. YOUNG, *Respondent*, v. ALONZO C. JONES *et al.*, *Appellants*, P. W. TONNESON *et al.*, *Respondents*.[1]

REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—EVIDENCE—SUFFICIENCY. Equity will reform a deed where the evidence of a mutual mistake is clear and convincing, and the evidence is sufficient that a warranty deed, excepting a mortgage which the "first" party assumed to pay, was so written by mutual mistake, where every witness present when the deal was consummated contradicted the evidence of the grantee that he did not assume it, and corroborated the preliminary written agreement of the parties (FULLERTON, J., dissenting).

[1]Reported in 130 Pac. 90.

EQUITY—LACHES—REFORMATION OF INSTRUMENTS—DELAY. A delay
of three years in bringing action will not defeat the right to reform
a deed which by mutual mistake provided that the grantor, instead
of the grantee, assumed payment of a mortgage, where no rights of
third parties were involved, the parties had early notice of plain-
tiff's claim, and no one was placed in a worse position by reason of
the delay, and there was no evidence of fraud or bad faith.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered January 12, 1912, upon find-
ings in favor of the plaintiff, in an action for reformation.
Modified.

*John B. Keener* and *Ralph Simon,* for appellants.

ELLIS, J.—This appeal presents the question of the right
to reform a deed on the ground of mutual mistake.

The plaintiff Young brought an action against the de-
fendants to foreclose a mortgage upon certain real estate,
situated on Vashon Island, in King county, executed on Sep-
tember 10, 1904, by the defendants Jones and wife to the
defendant Tonneson, for $900, and by Tonneson assigned
to the plaintiff, and demanding personal judgment against
Jones and wife. In 1908, Jones owned this property, and
the defendant Lofgren owned certain real estate in Tacoma
upon which there was a mortgage for $1,000. In February,
1908, Jones and Lofgren agreed to an exchange of these
properties. The memorandum of the agreement was as fol-
lows:

"Agreement by and between A. C. Jones and Louis Lofgren
as follows to exchange properties now listed with E. F. Greg-
ory on following basis: Warrantee deeds to each except pre-
sent mortgages, also abstracts, said Jones to pay in addi-
tion $500 in cash when papers are ready for transfer. Com-
ition to be $200 to E. F. Gregory Co., to be paid by Louis
Lofgren.                                        Louis Lofgren,
2-17-08.                                        A. C. Jones.
"Rec'd fifty dollars on above Feb'y 17-08. Louis Lofgren."

On February 24, 1908, deeds passed between the parties
in consummation of the agreement of exchange; the deed

from Lofgren and wife to Jones providing for the assumption of the $1,000 mortgage on the Tacoma property by Jones; the deed from Jones and wife to Lofgren warranting against all encumbrances, "except a certain mortgage for $900 given to P. W. Tonneson, which party of the first part assumes and agrees to pay." Jones paid the $500 cash to Lofgren, and Lofgren the $200 commission.

In the foreclosure suit, which was commenced in February, 1911, Jones and wife filed a cross-complaint, alleging that, in making the last-mentioned deed, the words "party of the *first* part" were used by mutual mistake, and should read "party of the *second* part," to conform to the intention of the parties that Lofgren assume the mortgage; and asked that the deed be so reformed, and in the event of any judgment being rendered upon the note and mortgage, that it be rendered against Lofgren and wife upon the assumption clause so reformed. The Lofgrens answered this cross-complaint, denying that they assumed or agreed to assume the mortgage, and resisting any reformation of the deed. After hearing the evidence, the court made appropriate findings for the foreclosure of the mortgage and for personal judgment thereon against Jones and wife, and further found that the defendants Jones were not entitled to have the deed executed by them to Lofgren reformed or modified in any respect. A decree was entered, foreclosing the mortgage, rendering a personal judgment against Jones and wife for the amount of the mortgage debt with interest, costs, and an attorney's fee, directing a sale of the property to satisfy the judgment, and also adjudging that, in case the property be sold to satisfy the judgment, then the defendants Lofgren have judgment against the defendants Jones "for the principal sum of said note and mortgage sued upon herein, to wit: $900, together with interest thereon accrued since September 10, 1907." The defendants Jones have appealed.

The evidence shows that the exchange was negotiated through one Kessinger, who was in the employ of the real

estate firm of Gregory & Company. Both Jones and Kessinger testified in substance, that they went to Lofgren's place of work and it was finally agreed that Jones and Lofgren would exchange properties, each to assume the mortgage on the property he received and Jones to pay Lofgren a difference of $500; that, on Kessinger's suggestion, the memorandum was written by Kessinger and Jones and signed by Jones and Lofgren; that Jones gave Lofgren a check for the $50 earnest money, and Lofgren signed the receipt therefor at the foot of the memorandum. Lofgren admitted signing the memorandum and receipt, but stated that he thought it was only a memorandum providing for his payment of the commission. He denied the agreement as stated by Kessinger and Jones, and testified in substance that he then stated he did not want property with a mortgage upon it, and that the real agreement was that Jones was to take the Lofgren property and pay the mortgage of $1,000 on it, and Lofgren was to take the Jones property, and Jones was also to pay the mortgage of $900 on it, and a difference of $500 cash, the Lofgren property being estimated at a value of $5,000, and the Jones property at $3,500. The deeds were prepared and executed in the office of Gregory & Company, one S. R. Webb of that firm acting as notary. He testified as follows:

"They were to exchange properties and each was to assume the mortgage on the property he received and Jones was to pay Lofgren a cash difference of $500. My recollection is that Lofgren's property was put in at $5,000 and Jones' at $4,500. Lofgren was to pay our firm a commission of $200. I gave these terms of the agreement and the description of both properties to our stenographer to draw the deeds. Both Lofgren and Jones fully understood that each was to assume the then existing mortgage on the property he was to receive. I took the acknowledgments of Lofgren and his wife and Jones and his wife to the respective deeds. I recognize this . . . as the deed given by Jones and wife to Lofgren. Lofgren was to assume the mortgage on the Vashon property deed by Jones and wife to him. This deed is

a mistake in that Lofgren does not assume to pay the mort-gage on the Vashon Island property."

Jones testified that he looked over the deed but did not discover the mistake. Eric Lofgren, a brother of Louis, tes-tified to the effect that he and Louis, on February 2, 1908, went to Vashon Island to see the Jones place, and he then heard Louis tell Jones that Jones would have to pay both mortgages; that he, Louis, could not under any other con-ditions trade with Jones, as he wanted a place free from en-cumbrances. He also estimated the Lofgren property at a value of $5,000, and the Jones property at $3,500. One Heu de Bourck, who it seems initiated the deal by introducing Kessinger to Jones, testified that, as he understood the deal, Jones was to accept the Lofgren property and assume pay-ment of the $1,000 mortgage thereon, and give in exchange the Jones property free of all encumbrances, and pay to Lofgren $500 additional in cash; that he considered the Jones property worth $2,500, but Jones had a short time before refused to take $3,500 for it. It does not appear that either Eric Lofgren or Heu de Bourck was present when the final terms were agreed upon or when the deeds were passed. It is fairly inferable that they only testified as to matters de-veloped in preliminary negotiations.

Jones further testified, that in May, 1908, he received a notice from a Tacoma bank that the interest on the $900 mortgage would soon be due; that he notified the bank that Lofgren had assumed the mortgage; that some days later he received a letter from E. R. York, attorney for the holder of the mortgage, stating that there was some dispute as to who should pay the interest; that he at once called on York and was informed that, in the deed which he had given to Lofgren, he, Jones, had assumed and agreed to pay the mort-gage; that he then protested that it was a mistake and that he would never pay it; that he then had his attorney, J. B. Keener, prepare a corrected deed, which was tendered to Lof-gren who refused to accept it; that, believing that Lofgren

would pay the mortgage, he took no further steps in the matter till February, 1911, when the foreclosure action was commenced.

We think that the evidence which we have thus fully reviewed strongly preponderates in favor of the appellants. The testimony of every witness who was present when the terms of exchange were finally agreed upon and also when the deeds were passed, save that of Lofgren himself, sustains the memorandum as speaking the intention of the parties. The evidence is clear and convincing that it was the intention of both parties that Lofgren should assume the payment of the $900 mortgage, and that the recital in the deed to the contrary was a mutual mistake. In such a case a court of equity will, in the absence of countervailing equities, grant a reformation. 4 Pomeroy, Equity Jurisprudence (3d ed.), § 1376; *Elliott v. Sackett*, 108 U. S. 132; *Coggins & Owens v. Carey*, 106 Md. 204, 66 Atl. 673, 124 Am. St. 468, 10 L. R. A. (N. S.) 1191; *Dennis v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210.

The decision of the trial court seems to have been determined largely by the fact that the appellants waited almost three years after discovering the mistake before taking any action to reform the deed. The doctrine of laches as a defense is grounded on the principle of equitable estoppel, which will not permit the late assertion of a right where other persons by reason of the delay will be injured by its assertion. The case before us presents no such aspect. No right of a third party is involved. The respondents Lofgren had notice of the appellants' claim almost as soon as the mistake was discovered. There is no evidence that the respondents or any one else will be placed in any worse position by a reformation because of the delay. No adverse equities have arisen in the interim. The fact of appellants' claim was at all times known to those claiming adversely. There was no evidence of fraud, deceit, or bad faith on the appellants' part. In such a case, mere delay, short of the period fixed by the statute of limita-

tions, will not bar the action. The question is dependent upon the inherent equities of the particular case. 20 Cyc. 725, 726; *Eno v. Sanders*, 39 Wash. 238, 81 Pac. 696; *Dennis v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210; *Gay v. Havermale*, 27 Wash. 390, 67 Pac. 804; *Brun v. Mann*, 151 Fed. 145, 12 L. R. A. (N. S.) 154; *White v. Bailey*, 65 W. Va. 573, 64 S. E. 1019, 23 L. R. A. (N. S.) 232; *Depue v. Miller*, 65 W. Va. 120, 64 S. E. 740, 23 L. R. A. (N. S.) 775; *Neppach v. Jones*, 20 Ore. 491, 26 Pac. 569, 849, 23 Am. St. 145. The appellants are entitled to the reformation sought. They are not barred by laches to assert their right.

The decree as relating to the issue between the appellants and the respondents Lofgren is reversed. The cause is remanded with direction to so modify the decree as to grant the reformation of the deed in question, and to provide that, in case a sale of the property to satisfy the mortgage debt leaves a deficiency, the appellants have judgment over for such deficiency against the respondents Lofgren.

CROW, C. J., MAIN, and MORRIS, JJ., concur.

FULLERTON, J. (dissenting)—In my opinion the evidence in favor of a mistake in the deed is not so clear and convincing as to warrant a reformation. I therefore dissent from the conclusion reached by the majority.